*838 OPINION.
Van Eossan:
Issue is joined in the case as to whether taxpayer was, in the taxable year, a personal holding company under the provisions of section 351 of the Revenue Act of 1934.[1]
*839 The petitioner concedes that at least 80 percent of its gross income for 1934 was derived from royalties, dividends, interest, annuities, and gains from the sale of stock or securities, but denies that on the crucial date, July 27, 1934, 50 percent in value of its outstanding-stock was owned, directly or indirectly, by or for not more than five individuals. It also denies that it is, or any time during its existence was, a personal holding company.
The respondent’s position is that on July 27, 1934, only 27,000 shares of the petitioner’s “stock” were outstanding and that 13,710 such shares were owned by five individuals.
The petitioner is an association taxable as a corporation. Its certificates of beneficial interest correspond to the stock certificates of a corporation. The principles governing the status and incidents of stock ownership, therefore, are applicable to the issuance and ownership of the shares in the petitioner.
Respondent argues that, since certificates had been issued on July 27, 1934, in exchange for only 27,000 of the 28,605 shares which the New York Trust investors had deposited with Greene & Brock, such 27,000 shares constituted the only “stock” outstanding within the meaning of the statute.
The petitioner contends that the expression “outstanding stock” contained in section 351 (b) (1) (B) must be construed according to the law of the State of Ohio, and cites Erie Railroad Co. v. Tompkins, 304 U. S. 64. It asserts that under the state law stock is “outstanding” when subscribed and paid for, that all the 28,605 shares in the petitioner were subscribed and paid for, and that hence the 13,710 shares owned by five individuals are less than the 50 percent of the outstanding stock required to render the statute operative. We are of the opinion that petitioner’s contention must be sustained.
In Erie Railroad Co. v. Tompkins, supra, the Supreme Court has recently said:
Except in matters governed by tbe Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State. And whether the law of the State shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern. There is no federal general common law. Congress has no power to declare substantive rules of common law applicable in a State whether they be local in their nature or “general”, be they commercial law or a part of the law of torts. And *840 no clause in the Constitution purports to confer such a power upon the federal courts. * * *
The established rule in Ohio is stated in 10 Ohio Jurisprudence, paragraph 173, page 287, as follows:
There is a marked and obvious distinction between the stock of a corporation and the certificate representing the stock. The certificate of shares of stock in the corporation is not the stock itself, but is a mere evidence of the stockholder’s interest in the corporate property which issues such certificates,[1] representing the interest which the owner and holder of it has in the entire assets of the corporation.[2]
At page 291, paragraph 196 of the same volume the law applicable to the situation before us is further stated as follows:
In the absence of statutory or charter requirements, no certificate of stock is necessary to attest the rights of the shareholders; such certificate, when issued, is merely an evidence or acknowledgment of the owner’s interest in the property of the corporation, but is not property itself. The issuranee thereof is by no means essential to the creation of the relation of stockholder; one may be the owner of stock without any certificate to evidence the fact. The certificate is authentic evidence of title to the stock, but it is not the stock itself, or necessary to its existence; a subscriber becomes a stockholder from the moment he subscribes to the stock. Thus the right to vote, or to make transfers, exists, although no certificate has been issued.
The cases supporting the law thus expressed are: Ball v. Towle Manufacturing Co., 67 O. S. 306; 65 N. E. 1015; Cincinnati, N. O. & C. R. R. Co. v. Third National Bank, 1 O. C. C. 199; Simmons Hardware Co. v. Stokes, 16 O. C. C. 145; Royce v. Tyler, 2 O. C. C. 175.
In Simmons Hardware Co. v. Stokes, supra, the court said:
A man may own an interest in corporate property as a shareholder, he may vote as a member, he may transfer his stock without a certificate, his interest in the assets and his liability for its debts do not appear to depend on his possession of a certificate — all this has often been declared by the courts. The certificate is not the title, the title exists without the certificate and independent of it.
The respondent’s own regulations, article 25, Regulations 71, applicable to stamp taxes, recognize the same principle: “* * * Stock is deemed to be issued when it is subscribed for and the subscription is accepted by the corporation.”
We hold the 28,605 shares in the petitioner, hereinabove mentioned, to be “outstanding” within the requirement of section 351. The agreement of exchange had been consummated; only the manual issuance of a small part of the certificates remained to be done. All rights of ownership had attached. It follows that respondent must *841 be reversed. Less than 50 percent in value of the outstanding stock in petitioner was owned by five individuals and consequently it does not come under the provisions of section 351.
In view of the conclusion we have reached above, it is unnecessary to discuss other contentions of the parties. It likewise follows that petitioner is subject to no penalty.

Decision will be entered for the fetitioner.

 SEC. 351. SURTAX ON PERSONAL HOLDING COMPANIES.
[[Image here]]
(b) ixmxanom. — As used in this title—
(1) The term “personal holding company” means any corporation (other than a corporation exempt from taxation under section 101, and other than a bank or trust company incorporated under the laws of the United States or of any State or Territory, a substantial part of whose business is the receipt of deposits, and other than a life-insurance company or surety company) if— (A) at least 80 per centum of its gross income for the taxable year is derived from royalties, dividends, interest, annuities, and (except in the ease of regular dealers in stock or securities) gains from the sale of stoek or securities, and (B) at any time during the last half of the taxable year more than 50 per centum in *839 value of its outstanding stock is owned, directly or indirectly, by or for not more than five Individuals. For the purpose of determining the ownership of stock in a personal holding company — (C) stock owned, directly or indirectly, by a corporation, partnership, estate, or trust shall be considered as being owned proportionately by its shareholders, partners, or beneficiaries; (D) an individual shall be considered as owning, to the exclusion of any other individual, the stock owned, directly or indirectly, by his family, and this rule shall be applied in such manner as to produce the smallest possible number of individuals owning, directly or indirectly, more than 50 per centum in value of the outstanding stock; and (E) the family of an individual shall include only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants.
[[Image here]]

Ball and the American Exchange Bank, et al. v. The Towle Manufacturing Co., 67 O. S. 306.

 Marble v. Van Wert National Bank, 3 O. C. C. 464, 20 C. D. 265.